**James C. Mahan**
**U.S. District Judge**

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| FIRST 100, LLC, | Case No. 2:17-CV-1438 JCM (CWH) |
| Plaintiff(s), | ORDER |
| v. | |
| CENLAR FSB, et al., | |
| Defendant(s). | |

Presently before the court is defendant/cross claimant/counter claimant RTED Nevada, LLC's ("RTED Nevada") motion for leave to amend answer. (ECF No. 73). Plaintiff First 100, LLC ("First 100") and cross defendants have not filed a response and the time to do so has passed.

Also before the court is cross defendant Goodman Law Offices, PC's ("Goodman") motion to dismiss. (ECF No. 76). RTED Nevada filed a response. (ECF No. 79). Goodman did not file a reply and the time to do so has passed.

Also before the court is cross defendant Valley Del Paradiso Homeowners Association's ("Valley Del Paradiso") motion for summary judgment. (ECF No. 92). Cross defendant United States of America; cross defendant Omni Financial, LLC ("Omni Financial"); and RTED Nevada each filed separate responses. (ECF Nos. 96, 99, 101). Valley Del Paradiso filed a reply. (ECF No. 104).

Also before the court is RTED Nevada's motion for summary judgment. (ECF No. 93). The United States; Omni Financial; and Valley Del Paradiso filed separate responses (ECF Nos. 97, 98, 100), to which RTED Nevada replied (ECF No. 103).

. . .

. . .

**I.     Facts**

This action arises from a dispute over real property located at 2080 Karen Avenue, Unit 93, Las Vegas, Nevada 89169 ("the property"). (ECF No. 1).

Robert Oggins purchased the property on or about April 8, 2004. (ECF No. 92-2). Oggins financed the purchase with a loan in the amount of $55,700.00 from Taylor, Bean & Whitaker Mortgage Corp. ("TBW"). *Id*. TBW secured the loan with a deed of trust, which names TBW as the lender, Chicago Title Lender Source as the trustee, and Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary acting solely as nominee for lender and lender's successors and assigns. *Id*. RTED Nevada is the current holder of the deed of trust. *See* (ECF No. 94-5).

On August 8, 2013, Valley Del Paradiso, through its agent Goodman, recorded a notice of delinquent assessment lien ("the lien") against the property for Oggins' failure to pay Valley Del Paradiso in the amount of $2,243.00. (ECF No. 92-7). On September 27, 2013, Valley Del Paradiso, through its agent Goodman, recorded a notice of default and election to sell pursuant to the lien, stating that the amount due was $2,986.00 as of September 27, 2013. *Id*.

On December 19, 2013, Valley Del Paradiso, though its agent Goodman, recorded a notice of foreclosure sale against the property, stating that a payment of $4,656.00 would be necessary to satisfy the lien. (ECF No. 92-9). On February 3, 2014, Valley Del Paradiso, through its agent Goodman, sold the property in a nonjudicial foreclosure. (ECF No. 92-11). As there were no bidders, the property reverted back to Valley Del Paradiso in a credit bid for $5,406.00. *Id*. On February 13, 2014, Valley Del Paradiso recorded the deed of foreclosure with the Clark County recorder's office. *Id*.

On July 17, 2014, First 100 purchased the property from Valley Del Paradiso in exchange for $6,996.00. (ECF No. 95-6). On July 24, 2014, First 100 recorded the deed of sale with the Clark County recorder's office. (ECF Nos. 95-8, 95-11).

At some point First 100 pledged the property in exchange for a loan from Omni Financial, which was secured by a deed of trust. *See* (ECF No. 95-8). On September 13, 2017, after First

100 defaulted under the terms of the loan, Omni Financial acquired an interest in the property. *Id.* The parties have not disclosure the nature of Omni Financial's interest.

Alongside the controversy regarding the foreclosure sale of the property, First 100 is in a second dispute with the United States. First 100 failed to pay various federal taxes, penalties, and interest. (ECF No. 97-2). On February 24, 2016, the Internal Revenue Service ("IRS") recorded with the Clark County recorder's office a notice of federal tax lien, stating an unpaid balance of $173,786.18. (ECF No. 97-3). The federal tax lien attaches to all property and rights to property that belong to First 100. *Id.* As of August 2, 2017, the IRS has made a total of $1,264,267.40 in assessments against First 100. (ECF Nos. 97, 97-2).

**II.      Procedural History**

On August 15, 2014, First 100 initiated this action in Nevada state court. (ECF No. 93). In the first amended complaint, First 100 alleged claims for quiet title against defendant Cenlar FSB (RTED Nevada's predecessor in interest); defendant Greepoint Mortgage Funding, Inc.; Oggins; Oggins as trustee of the Robert Oggins living trust; RTED America; and RTED Nevada. (ECF No. 1-2).

On April 12, 2017, RTED Nevada filed in state court an answer to First 100's first amended complaint, alleging a single counterclaim for quiet title against First 100. *Id.* In its answer, RTED Nevada also alleged cross-claims for quiet title against Goodman; Valley Del Paradiso; Omni Financial; cross defendant Colgan Financial Group, Inc.; cross defendant Vial Fotheringham, LLP; now dismissed cross defendant Nevada Title Company; cross defendant Orbis Financial, LLC ("Orbis Financial"); cross defendant First American Title Company; now dismissed cross defendant County of Clark; cross defendant State of Nevada; and the United States. *Id.*

On May 19, 2017, the United States removed the action to federal court. (ECF No. 1). On July 26, 2018, the United States filed an answer to RTED Nevada's answer, requesting the court to adjudge that the United States has valid federal tax liens against First 100. (ECF No. 13). On December 20, 2017, RTED Nevada filed an amended answer and added cross-claims for quiet title against cross defendant Scott Olifant and cross defendant Rephina Louie. (ECF No. 59). The

United States accordingly amended its answer and re-asserted its request that the court hold that the United States has valid federal tax liens against First 100. (ECF No. 70).

On June 11, 2018, the court dismissed with prejudice First 100's first amended complaint for First 100's failure to show cause as to why it has failed to retain new counsel and file a notice of appearance in accordance with previous court order. (ECF No. 89).

Now, RTED Nevada and Valley Del Paradiso have filed cross-motion for summary judgment, requesting that the court resolve whether the foreclosure sale extinguished RTED Nevada's deed of trust. (ECF Nos. 92, 93). In addition, RTED Nevada has filed a motion to amend answer in order to include State of Nevada, Department of Employment, Training & Rehabilitation, Employment Security Division ("Nevada Employment") as a cross defendant. (ECF No. 73). RTED Nevada is requesting leave to amend on the grounds that Nevada Employment may have a lien or judgment against the property. *Id*. Lastly, Goodman has filed a motion to dismiss RTED Nevada's cross-claim for quiet title on the grounds that Goodman claims no interest in the property. (ECF No. 76).

**III. Legal Standard**

*a. Motion to amend*

Federal Rule of Civil Procedure 15(a) provides that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The United States Supreme Court has interpreted Rule 15(a) and confirmed the liberal standard district courts must apply when granting such leave. In *Foman v. Davis*, the Supreme Court explained:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave sought should, as the rules require, be "freely given."

371 U.S. 178, 182 (1962); *see also Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990).

Further, Rule 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Local Rule 15-

James C. Mahan
U.S. District Judge

1(a) states that "the moving party shall attach the proposed amended pleading to any motion seeking leave of the court to file an amended pleading." LR 15-1(a).

### b. Motion to dismiss

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

"Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678-79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.*

Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678.

Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged – but it has not shown – that the pleader is entitled to relief." *Id.* at 679. When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court held,

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.*

    *c. Summary judgment*

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the nonmoving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to withstand summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that

party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a dispute of material fact conclusively in its favor. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.*

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether a genuine dispute exists for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**IV. Discussion**

Before the court are several motions. First, the court will deny Goodman's motion to dismiss as the court will resolve Goodman's potential liabilities at summary judgment. Second, the court will resolve the cross-motions for summary judgment in favor of Valley Del Paradiso because the property was sold in a valid foreclosure sale. Third, the court will deny RTED Nevada's motion for leave to amend answer because the court will hold that RTED Nevada's deed of trust does not encumber the property and therefore RTED Nevada does not need to sue

additional parties.  Lastly, the court will address the United States' request that the court hold that the federal tax liens are valid.

    *a. Motion to dismiss*

Goodman argues that the court should dismiss with prejudice RTED Nevada's cross-claim for quiet title because Goodman does not claim any interest in the property. (ECF No. 76). RTED Nevada argues that Goodman is properly joined in this action because it conducted the foreclosure sale of the property. (ECF No. 79).

Under rule 19(a), a party must be joined as a "required" party in two circumstances: (1) when "the court cannot accord complete relief among existing parties" in that party's absence, or (2) when the absent party "claims an interest relating to the subject of the action" and resolving the action without that party may, practically, "impair or impede the person's ability to protect the interest," or may "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1).

This court has previously held that dismissal is appropriate when the holder of the prior deed of trust seeks a declaration that the deed of trust survived foreclosure sale. *See, e.g., Bayview Loan Servicing, LLC v. SFR Investments Pool 1, LLC*, No. 2:14-CV-1875-JCM-GWF, 2015 WL 2019067, at *1 (D. Nev. May 1, 2015).  In contrast, this court has also held that dismissal is inappropriate in these circumstances when the holder of the prior deed of trust challenges the validity of the foreclosure sale. *See, e.g., Nationstar Mortg., LLC v. Berezovsky*, No. 2:15-CV-909-JCM-CWH, 2016 WL 1064477, at *3–4 (D. Nev. Mar. 2016).  Therefore, the nature of the remedy sought dictates the necessary parties.

In addition, this court has reasoned that parties facing a quiet title claim may be, at least nominally, necessary parties when the court's potential invalidation of the foreclosure sale could alter their possible liability to other entities in the case. *See Nationstar Mortg., LLC v. Maplewood Springs Homeowners Ass'n*, No. 2:15-CV-1683-JCM-CWH, 2017 WL 843177, at *6 (D. Nev. Mar. 1, 2017); *see also Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 879 (9th Cir. 2004) (considering the desire to avoid redundant litigation and specifying rule

19(a)(1)'s focus on allowing "meaningful relief"). Therefore, as Goodman is a necessary party to this litigation, the court will adjudicate Goodman's liabilities at summary judgment.

    *b. Cross-motions for summary judgment*

Valley Del Paradiso and RTED Nevada dispute whether RTED Nevada's deed of trust encumbers the property. (ECF Nos. 92, 93). Because RTED Nevada has failed to provide sufficient grounds to set aside the foreclosure sale, the court will grant Valley Del Paradiso's motion for summary judgment and deny RTED Nevada's motion for summary judgment.

Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (citations and internal quotation marks omitted). Therefore, a party must show that its claim to the property is superior to all others in order to succeed on a quiet title action. *See also Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

NRS 116.3116 *et seq*.[1] ("Chapter 116") allows an HOA to place a lien on its homeowners' residences for unpaid assessments and fines. Nev. Rev. Stat. § 116.3116(1). Under NRS 116.3116(2), HOA liens have priority over other encumbrances. Nev. Rev. Stat. § 116.3116(2). However, some encumbrances are not subject to an HOA lien's priority, including "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent." Nev. Rev. Stat. § 116.3116(2)(b).

---

[1] The 2015 Legislature revised Chapter 116 substantially. 2015 Nev. Stat., ch. 266. Except where otherwise indicated, the references in this order to statutes codified in NRS Chapter 116 are to the version of the statutes in effect in 2011–13, when the events giving rise to this litigation occurred.

Chapter 116 then provides an exception to the subparagraph (2)(b) exception for first security interests. *See* Nev. Rev. Stat. § 116.3116(2). In *SFR Investments Pool 1 v. U.S. Bank*, the Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

Under Chapter 116, an HOA can enforce its superpriority lien with a nonjudicial foreclosure sale. *Id.* at 415. Thus, "NRS 116.3116(2) provides an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

NRS 116.31166(1) provides that when an HOA forecloses on a property pursuant to NRS 116.31164, the following recitals in the deed are conclusive proof of the matters recited:

> (a) Default, the mailing of the notice of delinquent assessment, and the recording of the notice of default and election to sell;
> (b) The elapsing of the 90 days; and
> (c) The giving of notice of sale[.]

Nev. Rev. Stat. § 116.31166(1)(a)–(c).[2] "The 'conclusive' recitals concern . . . all statutory prerequisites to a valid HOA lien foreclosure sale." *See Shadow Wood Homeowners Assoc. v. N.Y. Cmty. Bancorp., Inc.*, 366 P.3d 1105 (Nev. 2016) ("*Shadow Wood*"). Nevertheless, courts retain the equitable authority to consider quiet title actions even when an HOA's foreclosure deed contains statutorily conclusive recitals. *See id.* at 1112.

---

[2] The statute further provides as follows:

> 2. Such a deed containing those recitals is conclusive against the unit's former owner, his or her heirs and assigns, and all other persons. The receipt for the purchase money contained in such a deed is sufficient to discharge the purchaser from obligation to see to the proper application of the purchase money.
>
> 3. The sale of a unit pursuant to NRS 116.31162, 116.31163 and 116.31164 vests in the purchaser the title of the unit's owner without equity or right of redemption.

Nev. Rev. Stat. § 116.31166(2)–(3).

Here, the parties have provided the recorded notice of delinquent assessment, the recorded notice of default and election to sell, the recorded notice of foreclosure sale, and the recorded trustee's deed upon sale. *See* (ECF Nos. 92-7, 92-9, 92-11). Further, the recorded foreclosure deed contains the necessary recitals to establish compliance with NRS 116.31162 through NRS 116.31164. (ECF No. 92-11); *See id*. at 1112. Therefore, pursuant to NRS 116.31166 and the recorded foreclosure deed, the foreclosure sale was valid to the extent that it complied with NRS 116.31162 through NRS 116.31164.

While NRS 116.3116 accords certain deed recitals conclusive effect, it does not conclusively entitle the buyer at the HOA foreclosure sale to success on a quiet title claim. *See Shadow Wood*, 366 P.3d at 1112 (rejecting that NRS 116.31166 defeats, as a matter of law, actions to quiet title). Thus, the question remains whether plaintiff has demonstrated sufficient grounds to justify setting aside the foreclosure sale. *See id.*

"When sitting in equity . . . courts must consider the entirety of the circumstances that bear upon the equities. This includes considering the status and actions of all parties involved, including whether an innocent party may be harmed by granting the desired relief." *Id*.

RTED Nevada argues that the court should grant summary judgment in its favor because, under *Bourne Valley*, Valley Del Paradiso foreclosed pursuant to a facially unconstitutional state statute. (ECF No. 93); *see Bourne Valley Court Tr. v. Wells Fargo Bank, NA*, 832 F.3d 1154 (9th Cir. 2016) ("*Bourne Valley*"). However, RTED Nevada's reliance on *Bourne Valley* is misplaced.

In *Bourne Valley*, the Ninth Circuit held that Chapter 116 violated the Due Process Clause of the Fourteenth Amendment because it did not require a party foreclosing on a property to provide notice to a holder of any subordinate security interest. *Bourne Valley*, 832 F.3d at 1159. This conclusion was based on the interpretation that NRS 116.31168(1) did not incorporate NRS 107.090, which requires notice of default to any person with a subordinate security interest. *Id*.

When the Ninth Circuit ruled in *Bourne Valley*, there was no authority on the interpretation of NRS 116.31168(1). Left with the general doctrines of statute interpretation, the court declined to incorporate NRS 107.090 on the grounds that it would render NRS 116.31168(1) superfluous. *Id*. (citing *S. Nev. Homebuilders Ass'n v. Clark Cnty.*, 117 P.3d 171, 173 (2005)).

- 11 -

Since the Ninth Circuit's decision in *Bourne Valley*, the Nevada Supreme Court has provided its interpretation of Chapter 116, holding that NRS 116.31168(1) does incorporate NRS 107.090. *SFR Invs. Pool 1, LLC. v. The Bank of N.Y. Mellon*, 422 P.3d 1248, 1252 (Nev. 2018) (expressly refuting *Bourne Valley*). Under this ruling, NRS 116.31168(1) requires notice to subordinate interest holders and, thus, does not violate the Fourteenth Amendment. *Id.*

Both the Ninth Circuit and the Supreme Court have recognized, "a [s]tate's highest court is the final judicial arbiter of the meaning of state statutes." *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123, 1129 (9th Cir. 2006) (citing *Gurley v. Rhoden*, 421 U.S. 200, 208 (1975)); *see also Knapp v. Cardwell*, 667 F.2d, 1253, 1260 (9th Cir. 1982) ("State courts have the final authority to interpret, and, where they see fit, to reinterpret the states' legislation."). Accordingly, this court will follow the Nevada Supreme Court's decision and hold that Valley Del Paradiso foreclosed on the property pursuant to a constitutional statute.

  *c. Motion to Amend*

RTED Nevada requests leave to file an answer that adds Nevada Employment as a cross-defendant. (ECF No. 73). RTED Nevada's previous pleading named only the State of Nevada as cross-defendant in order to resolve state tax liens on the property. (ECF No. 59). Since then, RTED Nevada has discovered that it must also sue Nevada Employment in order to resolve any judgment liens from Nevada Employment on the property. (ECF No. 73).

Typically courts freely give leave to amend when justice so requires. Fed. R. Civ. P. 15(a). However, when a party files a motion for leave to amend/supplement after the court has issued a scheduling order, a movant may amend a pleading only "for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Here, the court issued a scheduling order (ECF No. 31) on October 2, 2017, approximately five months before RTED Nevada filed its motion. Thus, RTED Nevada must satisfy the requirements set forth in Rule 16(b)(4).

RTED Nevada argues that is has good cause to add Nevada Employment because it is a necessary party to this litigation. (ECF No. 73). However, the court will grant summary judgment in favor of Valley Del Paradiso's and hold that RTED Nevada's deed of trust does not encumber

the property. Thus, because RTED Nevada will no longer have pending claims for quiet title, there is no need for RTED Nevada to include Nevada Employment as a cross-defendant.

   *d. Federal tax liens*

Pursuant to Local Rule IC 2-2(b), "for each type of relief requested or purpose of the document, a separate document must be filed." LR IC 2-2(b). Here, the United States included in its responses to the cross-motions for summary judgment a request that the court hold that the United States has valid federal tax liens against First 100. (ECF Nos. 96, 97). The court cannot consider the United States' request for relief unless it is filed separately, as a motion.

**V.  Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that RTED Nevada's motion for leave to amend (ECF No. 73) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that Goodman's motion to dismiss (ECF No. 76) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that Valley Del Paradiso's motion for summary judgment (ECF No. 92) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that RTED Nevada's motion for summary judgment (ECF No. 93) be, and the same hereby is, DENIED.

DATED November 15, 2018.

_____
UNITED STATES DISTRICT JUDGE